UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 09-20101 |
| Plaintiff, | Sean F. Cox |
| vs. | United States District Judge |
| MICHAEL FARDELL MONTGOMERY, | Michael Hluchaniuk |
| | United States Magistrate Judge |
| Defendant. | |

# REPORT AND RECOMMENDATION
# DEFENDANT'S MOTION TO SUPPRESS (Dkt. 14)

## I. PROCEDURAL HISTORY

Defendant was indicted on December 2, 2009, and charged with a single count of being a felon in possession of a firearm on January 31, 2008. (Dkt. 3). On January 5, 2010, defendant filed a motion to suppress statements made during contact with police officers on January 31, 2008. (Dkt. 14). The government filed a response to the motion on January 25, 2010. (Dkt. 19). An evidentiary hearing relating to the motion was held on February 26, 2010. The transcript of the hearing was filed on March 15, 2010. (Dkt. 22). Following the preparation of a transcript of the hearing, defendant filed a supplemental brief on March 19, 2010. (Dkt. 25). The government filed its supplemental, post-hearing brief on April 21, 2010. (Dkt. 27).

## II.  RELEVANT FACTS

On January 31, 2008, officers with the Flint Police Department (FPD) executed a search warrant at 3072 Roanoke in the City of Flint.  (2/26/10 Hrg. Tr., p. 7).  When the first officer of the raid team entered the premises, defendant was observed running to the bathroom where he was observed attempting to flush a quantity of cocaine down the toilet.  (Tr., p. 8).  Defendant was arrested, taken to another room of the house where he remained for the approximate two hour period that it took to complete the search of the residence.  (Tr., p. 9).  The raid team was led by Sgt. Frank Sorenson, a 23-year veteran of the FPD.  (Tr., pp. 20-22).  No questions were asked of defendant at the residence beyond identification information.  (Tr., p. 24).

At the conclusion of the search, defendant was transported to the FPD headquarters where he was questioned by Sgt. Sorenson.  The questioning took place in Sgt. Sorenson's office.  Defendant sat at a desk next to Sgt. Sorenson. (Tr., p. 49).  Defendant was not in handcuffs, Sgt. Sorenson did not raise his voice and the interview was conducted in a conversational tone.  (Tr., p. 71).  The interview began about 10:20 p.m.  (Ex. 1).  At first, Sgt. Sorenson asked routine booking questions of defendant and noted the responses to the questions on a piece of paper.  Defendant responded to those questions, including a few questions relating to his current cognitive ability, and defendant responded that he was not under the

influence of any alcohol or drugs. (Tr., pp. 29-30). At approximately 10:25 p.m., Sgt. Sorenson read defendant a series of "Miranda" rights from a copy of a standard FPD form that he kept taped to his clipboard that he used in such circumstances. (Tr., pp. 31-33, 64). Defendant agreed to waive his rights and make a statement. *Id.*

Defendant stated that he had been brought to Flint in November of 2007 by an individual from Detroit. Defendant acknowledged that he sold crack from one house for a couple of weeks and then apparently moved to another location. Defendant identified the names of the people who supplied him with drugs to sell and provided descriptions of those two individuals. (Ex. 1). Defendant offered to "do" his supplier for Sgt. Sorenson. (Tr., p. 58). Sgt. Sorenson indicated to defendant that in order for Sgt. Sorenson to agree to work with defendant, defendant would have to "take responsibility" for what he had done on Roanoke. (Tr., p. 58). Defendant then wrote out a statement in which he took "full responsibility" for "the two guns not loaded" as well as a "sack of weed" and "crack cocaine." Defendant admitted that he sold about one ounce of crack cocaine per week. (Ex. 1).

Sgt. Sorenson stated he did not promise defendant that he would be released if he made a statement and did not promise him any leniency in exchange for his statement. (Tr., p. 59). However, Sgt. Sorenson stated that he would not have

3

Report and Recommendation
Motion to Suppress
*U.S. v. Montgomery*; Case No. 09-20101

allowed defendant to cooperate if he did not take responsibility for his conduct. (Tr., pp. 62-63).

Defendant, at first, said that Sgt. Sorenson told him if he took responsibility for the guns he could "go home." (Tr., p. 67). He later testified that he could not remember if Sgt. Sorenson told him that he would not be released if he did not cooperate and then defendant denied that Sgt. Sorenson told him he would not be able to leave if he did not give a statement and he would go to jail for a long time. (Tr., pp. 74-75). Finally, defendant stated it was his "understanding" that if he did not take responsibility for the guns he would not be allowed to "work off" the charges. (Tr., p. 76). No evidence was introduced that indicated that defendant ever did anything that amounted to cooperation with law enforcement authorities following the interview by Sgt. Sorenson.

## III. ANALYSIS AND CONCLUSIONS

In his initial brief defendant argued that he was interrogated at the residence where he was arrested without the benefit of Miranda warnings and that any statements made at the police headquarters were not voluntary because they were the product of police coercion coupled with his use of marijuana. In his post-hearing brief, defendant argued that the totality of the circumstances demonstrated that the interview of defendant was conducted under "objectively coercive" circumstances and that defendant's will was overborne by an "illusory" promise of

leniency and a promise of freedom from custody. (Dkt. 25, p. 2). Defendant cites *McCall v. Dutton*, 863 F.2d 454 (6th Cir. 1988) in support of his argument. Defendant has apparently abandoned his claim that he made statements prior to receiving his *Miranda* warnings or that his statements were made during a time when he was under the influence of marijuana. The government's position is that there was no coercive conduct by the law enforcement officers, if there was coercive conduct by the officers, it did not cause defendant to make any statements and, further, the conduct did not overbear the will of defendant.

The most recent published case from the Sixth Circuit dealing with the voluntariness of a defendant's statement is *United States v. Johnson*, 351 F.3d 254 (6th Cir. 2003). A number of the controlling principles associated with evaluating the voluntariness of a defendant's statement were identified in *Johnson*. First, the court noted, citing *United States v. Mahan*, 190 F.3d 416 (6th Cir. 1999), that the "totality of the circumstances" should be assessed in order to determine if a defendant's will was overborne in a particular case. *Id*. at 260. Second, where a defendant claims a coerced confession the government has the burden of proof, by a preponderance, that the confession was voluntary. *Id*. Third, the three factors to be examined in this regard are: (1) whether the police activity was objectively coercive; (2) whether the coercion in question was sufficient to overbear the defendant's will; and (3) whether the police misconduct was the crucial motivating

factor in the defendant's decision to offer the statement. *Id.* "Coercive police conduct is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). To be involuntary, the statement must be "extorted" from defendant by the police by means of coercive activity. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).

Defendant asserts, correctly, that promises by police can amount to coercion under certain circumstances. "[A] promise of lenient treatment or of immediate release may be so attractive as to render a confession involuntary." *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992). However, "promises of leniency" are coercive only "if they are broken or illusory." *Johnson*, 351 F.3d at 262. Defendant does not allege any coercive conduct other that resulting from alleged promises made by Sgt. Sorenson. Therefore, the first area of inquiry must be whether any promise was made by Sgt. Sorenson and, if a promise was made, was it objectively coercive.

Sgt. Sorenson testified that defendant was not promised anything regarding his statement. (Tr., pp. 57-58). He testified that defendant brought up the possibility of cooperating by offering to "do" his supplier. (Tr., p. 58). Sgt. Sorenson's response to that was, based on a personal policy, that defendant had to "take responsibility" for his conduct in order for Sgt. Sorenson to allow him to

cooperate. (Tr., pp. 62-63). The apparent basis of this policy was that Sgt. Sorenson did not want to work with someone as an informant who was not willing to be honest relating to that person's own conduct. Due to lack of resources, cooperation did not seem very important to Sgt. Sorenson and he might have considered the investigation of a suspect's supplier but that would be the extent of it. (Tr., p. 49). Sgt. Sorenson did not give the defendant any further direction in "taking responsibility" for his conduct. (Tr., p. 50). That is, Sgt. Sorenson did not tell defendant what to say when he wrote out his statement that would have represented "taking responsibility" for his conduct. *Id*.

Defendant's version of these events is somewhat different than that of Sgt. Sorenson. Defendant stated, initially, that Sgt. Sorenson said that if defendant took responsibility for the guns he could go home. (Tr., p. 67). Defendant later stated he could not remember if Sgt. Sorenson told him he would not be released if he did not cooperate. (Tr., p. 74). On the third occasion in which defendant spoke about this issue he denied that Sgt. Sorenson told him he was not going to be released if he did not give a statement. (Tr., p. 75). On the fourth occasion, defendant stated that it was his "understanding" that if he did not take responsibility for the guns he would not be released but he did not attribute his "understanding" to anything that Sgt. Sorenson said. (Tr., p. 76). Weighing the relative credibility of Sgt. Sorenson as compared to defendant, the undersigned credits Sgt. Sorenson's version of the

events. Sgt. Sorenson would seem to have very little motive to fabricate his testimony whereas defendant has a clear motive - he could very well view this as an opportunity to get out from underneath these criminal charges. Sgt. Sorenson appeared to be focused on the drug trafficking aspects of defendant's circumstances and the record does not disclose any particular reason he would be interested in trying to get defendant to make admissions regarding the firearms found in the residence. Additionally, defendant testified that Sgt. Sorenson did not tell him anything about the guns but when defendant "took responsibility" for his conduct he stated the guns were "unloaded," which seems inconsistent with knowing nothing about them. Based on this determination, there is not any coercive police conduct associated with defendant's statement and the motion could be denied on that basis alone.

However, to take the analysis further for purposes of completeness, defendant's statement here was prompted by his desire to cooperate rather than by anything that Sgt. Sorenson said. Defendant initiated the possibility of cooperation in the discussion between he and Sgt. Sorenson. (Tr., p. 58). Like the defendants in *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992) (statements not involuntary where defendant made statements after asking to speak with prosecuting) and *United States v. Ross*, 2007 WL 4572571 (N.D. Ohio 2007) (defendant not allowed to cooperate unless made full disclosure of criminal

activity), defendant made the statements he did in order to market his information to the police for his personal benefit and they were "not the result of any illegitimate effort by [the police] to coerce him to confess." *Wrice*, 954 F.2d at 411.

As noted earlier, promises that are broken or illusory can be coercive. Any alleged promise to release defendant if he gave a statement cannot be coercive in this instance because he was released. Additionally, promises relating to future cooperation are normally not objectively coercive. Such promises are different than a deliberate inducement of inculpatory statements through some illusory promise of leniency and are not therefore objectively coercive. *United States v. Assi*, 512 F.Supp.2d 1047, 1052-53 (E.D. Mich. 2007) (general offer of "help" on future criminal charges in exchange for statement not coercive where defendant did not ultimately cooperate). *See also Ross*, *supra*, (promise to not charge defendant if proved to be a reliable informant not coercive where defendant turned out not to be reliable) and *United States v. Wiley*, 2005 WL 1285712 (6th Cir. 2005) (promise that prosecutor would be informed of cooperation without promise of specific

sentence not coercive).[1]

Finally, even if there were some coercive conduct by the police, it did not overbear the will of defendant. Defendant's statement took place in the police station after being taken there following his arrest. He was not denied food or water and was not subject to prolonged interrogation by multiple police officers. He was not restrained or threatened during the interview and the entire interview took place in approximately half an hour. The indictment indicates that defendant had three prior felony convictions, so it is clear he has had prior experience with law enforcement officers. While defendant testified he had only a tenth grade education, he was approximately 36 years old at the time and his testimony in court evidenced a level of maturity and knowledge that indicated it is unlikely he was confused or intimidated by the interview process. Further, he now states that what he told Sgt. Sorenson regarding his possession of the firearms was false. If that present statement is true, it does not suggest someone whose will is overborne by the police, but rather someone who has complete control of what he is saying and knowingly makes a false statement to benefit himself under the circumstances he

---

[1] Cases from outside the Sixth Circuit that made consistent findings regarding a general promise of future benefit based on cooperation in the future not being coercive include: *United States v. Coleman*, 208 F.3d 786, 791 (9th Cir. 2000); *United States v. Dillon*, 150 F.3d 754, 758 (7th Cir. 1998); *United States v. Broussard*, 80 F.3d 1025, 1034 (5th Cir. 1996); and *United States v. Ruggles*, 70 F.3d 262, 265-66 (2d Cir. 1995).

found himself in at the time. Under the totality of the circumstances applicable to the events surrounding defendant's statement, his statement was voluntary and it is recommended that his motion to suppress be denied.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that defendant's motion to suppress be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 6, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on May 6, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Nancy A. Abraham, AUSA, and Glenn M. Simmington, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): United States Marshals Service, Pretrial Services Agency.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov

12

Report and Recommendation
Motion to Suppress
*U.S. v. Montgomery*; Case No. 09-20101