UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                                Case No. 09-20101

Michael Fardell Montgomery,            Hon. Sean F. Cox

    Defendant.
_____/

## OPINION AND ORDER ADOPTING THE REPORT
## AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Defendant Michael Montgomery ("Defendant") is charged in a single-count indictment with being a felon in possession of a firearm (Doc. No. 3). The case is currently before the Court for consideration of Defendant's objections to the Magistrate Judge's Report and Recommendation which Defendant filed on May 20, 2010 (Doc. No. 31). For the reasons that follow, the Court shall ACCEPT and ADOPT the Magistrate Judge's Report and Recommendation and DENY Defendant's Motion to Suppress.

### BACKGROUND

On January 5, 2010, Defendant filed a motion to suppress statements that he made to local law-enforcement officers following his arrest (Doc. No. 14).

This Court entered an order referring the motion to Magistrate Judge Michael Hluchaniuk on January 11, 2010 (Doc. No. 11).

On February 26, 2010, Magistrate Judge Hluchaniuk held a hearing at which time both parties called witnesses and presented evidence. The parties also filed post-hearing briefs (Doc. Nos. 25 & 27).

Relevant Facts

On January 31, 2008, at approximately 8:30 p.m., a group of officers from the Flint Police Department executed a search warrant at 3072 Roanoke St. in Flint, Michigan. (Tr. at 7:15; 63:16.)

After the police broke the door, Sgt. Wayne Suttles entered the home and found Defendant in the kitchen. (*Id.* at 8:5-7.) Defendant quickly ran to the bathroom where he tried to flush cocaine down the toilet. (*Id.* at 8:11-12.) Sgt. Suttles chased after him, arrested him, and brought him to the living room. (*Id*. at 8:12-21.)

The search lasted approximately an hour and a half. (*Id*. at 8:12-21.) During that time, the police asked Defendant questions regarding his identity, but did not interrogate him. (*Id*. at 24:11-17; 74:14-16.)

After the search, the police transported Defendant to the Flint Police Department. There, Sgt. Frank Sorenson, the officer in charge of the case, interviewed Defendant in his office. (*Id.* at 26:20-24.)

The interview began around 10:20 p.m. (Ex. 1), and was conducted in a conversational tone. (*Id.* at 71:21-23.) Defendant sat at a desk beside Sgt. Sorenson and was not handcuffed. (*Id.* at 49:14-18.)

Initially, Sgt. Sorenson asked Defendant "preliminary pre-interview questions" (*id.* at 29:10-17), and noted Defendant's answers on a piece of paper (Ex. 1).

Defendant stated that he was unemployed, had a tenth-grade education, and could read and write. (*Id.* at 29:18-24; Ex. 1.) Defendant also revealed that had smoked a "dime bag" of marijuana in the previous twenty-four hours, but had not taken any other drugs or consumed

2

alcohol. (*Id.*) Defendant said that he was not high or intoxicated. (*Id.*)

At approximately 10:25 p.m., Sgt. Sorenson read Defendant a series of *Miranda* rights from a form that he had taped to his clipboard. (*Id.* at 31:7-32:1.) Sgt. Sorenson simultaneously noted on a piece of paper that Defendant understood his rights. (*Id.* at 31:9-11: Ex. 1.)

Defendant waived his rights and continued with the interview. (*Id.* at 33:7-22.) Defendant stated that he had been in Flint since November, 2007, after one of his suppliers brought him there from Detroit. (Ex. 1.) He explained that he previously sold crack at a different house in Flint, and he named and described both of his suppliers. (Ex. 1.)

At this point, however, the stories diverge. According to Sgt. Sorenson, Defendant offered to "do" his suppliers. (Tr. at 58:22.) Sgt. Sorenson did not ask defendant for his cooperation (*id.* at 58:6-8), but told Defendant that if he wished to cooperate, he would "have to write out a statement taking responsibility for what you did up there on Roanoke." (*Id.* at 58:22-24.) Sorenson testified that he did not promise Defendant anything to induce his statement. (Tr. at 57:25-58:2.) Specifically, he did not promise him leniency (*id.* at 58:3-5), or that he would release him. (*Id.* at 59:15-16.)

It is undisputed that Defendant wrote and signed a statement in which he took "full responsibility" for the "two guns not loaded [,] a sack of weed [,] and crack cocaine . . . ." (Ex. 1.)

Sgt. Sorenson testified that the interview ended after Defendant made his statement at approximately 11:05 p.m. (Tr. at 59:8-11; 64:14-16.)

Defendant provided a different account. Defendant testified that he initially believed that he had been arrested on drug-related charges, and he did not know that he was arrested for

3

possession of a firearm until after Sgt. Sorenson began the interview. (*Id.* at 66:21-67:7.)

Defendant stated that Sgt. Sorenson told him he could go home if he took responsibility for the weapons. (*Id.* at 67:20-23.) On cross-examination, however, Defendant could not remember whether Sgt. Sorenson told him that he could not to leave unless he gave a statement. (*Id.* at 75:1-4.)

It is undisputed that Defendant was released pending further investigation, despite the fact that he had outstanding warrants. (*Id.* at 54:6-7; 40:19-23.)

On March 4, 2009, the Government filed a sealed indictment charging Defendant with being a felon in possession of a firearm, stemming from the events on January 31, 2008. The indictment was unsealed on December 2, 2009.

## ANALYSIS

On May 6, 2010, Magistrate Judge Hluchaniuk filed his Report and Recommendation ("R & R") (Doc. No. 28). Magistrate Judge Hluchaniuk found that Sgt. Sorenson's version of the events was more credible than Defendant's and concluded "there [was] not any coercive police conduct associated with [D]efendant's statement . . . ." (R & R at 8.) Magistrate Judge Hluchaniuk alternatively found that "even if there was some coercive conduct by the police, it did not overbear" Defendant's will, and therefore, under the totality of the circumstances, Defendant's statement was voluntary. (R & R at 10-11.)

### Standard of Review

The Sixth Circuit has stated that "a party must file timely objections with the district court to avoid waiving appellate review." *Smith v. Detroit Federation of Teachers Local*, 231, 829 F.2d 1370, 1373 (6th Cir. 1987). "[O]nly those specific objections to the magistrate's report

4

will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *Id.* "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991).

Federal Rule of Civil Procedure 72(b)(3) provides: "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.*; 28 U.S.C. § 636(b)(1). In making this determination, the court is not required to conduct an evidentiary hearing. *See United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("[I]n providing for a 'de novo determination' rather than a de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.").

Where a proper objection has been made to the magistrate judge's credibility determinations, a district court reviews the determinations de novo. *See United States v. Saltzman*, 992 F.2d 1218, *2 (6th Cir. 1993) (unpublished) (citing *Raddatz*, 447 U.S. at 681 n.7).[1]

### Objection No. 1

First, Defendant argues that the totality of the circumstances supports the conclusion that

---

[1]There are conflicting unpublished opinions within the Sixth Circuit as to whether a district court may *reject* a magistrate's proposed credibility determinations without conducting a hearing. *See Saltzman*, 992 F.2d at *2; *United States v. Davis*, 362 F.Appx. 632, 635 (6th Cir. 2010) (unpublished) ("[A] district judge may disregard a magistrate's credibility findings without listening to live testimony."). *But see United States v. Bermudez*, 238 F.3d 424, *3 (6th Cir. 2009) (unpublished) ("[A] district court normally should not reject a proposed finding that rests on a credibility determination without hearing live testimony from the witness."). This Court need not reach this issue, however, because it adopts the R & R's credibility determinations.

Defendant's statement regarding the two guns "was the product of coercive police conduct . . . ." (Def.'s Objections at 8.)

In support of his objection, Defendant attacks the R & R's determination that Sgt. Sorenson's testimony is more credible than Defendant's.

In comparing Sgt. Sorenson's testimony with Defendant's, the R & R states, "[D]efendant testified that Sgt. Sorenson did not tell him anything about the guns but when defendant 'took responsibility' for his conduct he stated the guns were 'unloaded,' which seems inconsistent with knowing nothing about them." (R & R at 8.)

Defendant notes that his "testimony, taken as a whole, is plainly equivocal concerning exactly what Sgt. Sorenson told him about the guns . . . ." (Def.'s Objections at 8.)

During direct examination, Defendant testified that he did not know that he was being charged for guns until he was in Sgt. Sorenson's office, and Sgt. Sorenson "said that they had found two weapons under the couch." (Tr. at 69:2-5.)

On cross-examination, the prosecutor asked Defendant the following:

> Prosecutor: "So, . . . you didn't even know there were any guns in the house until Sgt. Sorenson told you about them?"
> Defendant: "Until he told me they found two weapons."
> Prosecutor: "What did he tell you about those guns?"
> Defendant: "He didn't tell me anything. I didn't know nothing about them. He said they found two guns in the house. . . ."
> Prosecutor: "Okay. And did he tell you what kind of guns they were?"
> Defendant: "No, ma'am."

(Tr. at 75:17-25.)

Defendant testified that Sgt. Sorenson did not tell him anything about the guns, except that they were found in the house. Notably, Defendant never testified that Sgt. Sorenson told

6

him that the guns were unloaded.

The R & R does not state that Mr. Montgomery *knew* whether the guns were loaded or unloaded. Rather, it weighs Mr. Montgomery's own testimony on this issue, as a factor in determining his credibility.

This Court agrees with the R & R's determination that Sgt. Sorenson's testimony is more credible than Defendant's with regard the voluntariness of Defendant's confession. As noted in the R & R, "Sgt. Sorenson appeared to be focused on the drug trafficking aspects of defendant's circumstances and the record does not disclose any particular reason he would be interested in trying to get defendant to make admissions regarding the firearms found in the residence." (R & R at 8.)

In light of the Court's decision to credit Sgt. Sorenson's testimony, the Court finds that Sgt. Sorenson did not promise Defendant freedom or eventual leniency in exchange for his statement. Instead, Defendant's statement was motivated by his own desire to cooperate.

Accordingly, the Court finds that Defendant's statement, "I . . . take full responsibility . . . for the two guns not loaded . . . ," was not the product of coercive police conduct, and it denies Defendant's first objection.

<u>Objection No. 2</u>

Second, Defendant objects that the R & R's credibility determination in favor of Sgt. Sorenson was not based on reasonable inferences drawn from evidence in the record. (Def.'s Objections at 13.)

The R & R states:

> Weighing the relative credibility of Sgt. Sorenson as compared to defendant, the undersigned credits Sgt. Sorenson's version of the

events. Sgt. Sorenson would seem to have very little motive to fabricate his testimony whereas defendant has a clear motive - he could very well view this as an opportunity to get out from these criminal charges. Sgt. Sorenson appeared to be focused on the drug trafficking aspects of defendant's circumstances and the record does not disclose any particular reason he would be interested in trying to get defendant to make admissions regarding the firearms found in the residence.

(R & R at 8.)

This Court has conducted a thorough review of the case file, the hearing transcript, the R & R, and Defendant's objections. Having done so, the Court reaches the same conclusion as the R & R regarding the decision to credit Sgt. Sorenson's testimony.

The Court additionally notes that Sgt. Sorenson's testimony is largely corroborated by his notes (Ex. 1). Further, Sgt. Sorenson appeared to have a better recollection of the facts regarding what was said during the interview.[2]

Accordingly, the Court agrees with the R & R's decision to credit Sgt. Sorenson's version of events, and it denies Defendant's second objection.

## Objection No. 3

Third, the Defendant argues that the R & R does not give sufficient evidentiary value to Sgt. Sorenson's use of the word "commitment" nor to his decision to eventually release Defendant. (Def.'s Objections at 13.)

On cross-examination, defense counsel asked Sgt. Sorenson the following:

Defense counsel: "You would have been aware, as the officer in

---

[2] Neither Sgt. Sorenson nor Defendant were able to recall *all* of the events that occurred on January 31, 2008, because more than two years had passed between the initial arrest and the suppression hearing.

8

> charge, that when the LEIN[3] was run, there were three outstanding warrants for Mr. Montgomery, is that true?"
> Sgt. Sorenson: "At some point, yeah, they would have told me that he had some warrants."
> Defense counsel: "At some point before letting him go, you would have known that as the officer in charge, true?"
> Sgt. Sorenson: "Yeah, because I'm not going to tell him I'm going to release him, then find out he has a warrant and have to lodge him. I like to know before I make any commitments."

(Tr. at 40:3-12.)

Defendant argues that the R & R does not account for the fact that Defendant was released despite his outstanding warrants. (Def.'s Objections at 7.)

The R & R does, however, expressly state that it credited Sgt. Sorenson's version of the events. After refreshing his recollection by looking at his police report, Sgt. Sorenson acknowledged that he released Defendant pending further investigation. (Tr. at 53:22; 56:19-22.) It is likely that this is exactly what occurred, regardless of Defendant's outstanding warrants.

Sgt. Sorenson's use of the word "commitment" does not show that he *promised* Defendant early release. Sgt. Sorenson unequivocally testified that he did not promise to release Defendant in exchange for his statement. (Tr. at 60:19-22.) He said that he ordered Defendant's release after he had been booked. (Tr. at 56:22.)

Sgt. Sorenson's policy of checking for warrants before he tells a suspect whether he will be released does not contradict his testimony.

Sgt. Sorenson's use of the word "commitments" and his order to release Defendant are consistent with the finding that Defendant's statement was voluntary. Accordingly, the Court

---

[3]Law Enforcement Information Network

9

denies Defendant's third objection.

CONCLUSION & ORDER

The Court ACCEPTS and ADOPTS the R & R.  IT IS ORDERED that Defendant's Motion to Suppress Evidence is DENIED.

IT IS SO ORDERED.

S/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated:  July 2, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 2, 2010, by electronic and/or ordinary mail.

S/Jennifer Hernandez<br>
Case Manager